# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES A. ROZELL, | : | CIVIL NO: 3:11-CV-00914 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| JAMES HANJARAS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

This case concerns a long and acrimonious history between the plaintiff, James A. Rozell, and the police and probation authorities in Susquehanna County Pennsylvania. That history includes complaints made to the police by private individuals about Rozell and made by Rozell against some of those same individuals. Currently pending is Rozell's motion for summary judgment against three of those individuals. Because Rozell has failed to establish that there are no disputed issues of material fact and that he is entitled to judgment as a matter of law, we recommend that his motion for summary judgment be denied.

## II. Background and Procedural History.

On May 13, 2011, Rozell began this action by filing a complaint naming as defendants the following seven individuals and entities: (1) the Susquehanna County Probation Department; (2) the Pennsylvania State Police; (3) Pennsylvania State Trooper Glenn Whitney; (4) James Hanjaras; (5) Robert Thomas; (6) Judy Thomas; and (7) Matthew Thomas.

Rozell alleges the following facts in his complaint.[1]  He alleges that a string of false and harassing criminal charges were filed against him over the course of nearly fifteen years.  His interactions with law enforcement began when he was convicted of reckless endangerment for speeding through an intersection in 1994.  He was sentenced to probation and during this probationary period, Susquehanna County Probation Officers Gulbin and Smith conducted a search of Rozell's property, and Rozell was subsequently arrested by a Pennsylvania State Trooper for possession of a prohibited offensive weapon.  Rozell was eventually found not guilty of that offense.

In June of 2002, a Pennsylvania State Trooper cited Rozell for public drunkenness and disorderly conduct in the parking lot of the Gibson State Police

---

[1] Although Rozell filed a motion for summary judgment, he has not filed a statement of material facts, and thus, in order to explain the nature of the case we set forth the allegations of the complaint in some detail.

Barracks. A local magistrate found Rozell guilty of disorderly conduct but not guilty of public drunkenness. The disorderly conduct conviction was reversed on appeal.

In March of 2007, Rozell took up residency in his late father's home. Between 2007 and 2008, he observed what he thought were suspicious activities by the lessees of stone quarries located on the property. Rozell believes that the operators of the stone quarries on the land were conspiring with members of his family and possibly others to make trouble for him. One of the quarry operators was a good friend of Rozell's uncle.

According to Rozell, on July of 2007, a Montrose Borough Police Officer brandished a firearm in his direction during a traffic stop, and Rozell alleges that he was scared for his life and, therefore, proceeded to drive away from the officer. Rozell was later charged with eleven misdemeanor and summary offenses related to his flight from the traffic stop. As part of a plea agreement, Rozell was sentenced to probation.

In December of 2007, Susquehanna County Probation officers performed a search of property surrounding Rozell's home during which they found and confiscated a firearm registered to Rozell. Also, in December of 2007, Rozell received a notice to appear on charges related to his alleged failure to inform the

court of his 1994 offense during plea agreement discussions for the July 2007 offenses. According to Rozell, in January of 2008, his probation was revoked. Rozell alleges that the District Attorney cited his attempt to visit his girlfriend, who was also on probation at the time, and allegations that Rozell harassed, threatened and "used gun play" toward a friend—Wayne Sands, Jr.— of Rozell's uncle as the reasons for revocation. Rozell claims that he had permission to visit his girlfriend and that the allegations by Sands were made in retaliation for a complaint that Rozell had filed against Sands for unlawful taking of wildlife. In June of 2008, Rozell pleaded guilty to two of the eleven July 2007 charges and received a $400 fine and twelve months of probation.

In January of 2008, Rozell "became a property owner of the ground" of his deceased father's property. Rozell alleges that, on about June 15, 2008, he verbally told the quarry operators, Robert and Jacky Thomas, that they needed a lease to be on the property and that they were to reclaim and clean up a portion of one of the quarries. According to Rozell, a Department of Environmental Protection inspection of the quarry found unauthorized mining and other violations. Rozell subsequently filed a report with the police about theft and vandalism of his property relating to the unauthorized mining.

According to Rozell, on February 14, 2009, he followed a truck he saw on a private road on his property in order to record the license plate number. Four days later, probation officer Gulbin filed probation-violation charges against Rozell, based on the statements of Joan Kamansky, the driver of the truck, who claimed that Rozell was harassing her. In March of 2009, a judge ordered that the probation violation be withdrawn.

On March 30, 2009, Pennsylvania State Police and Susquehanna County Probation officers conducted a search of Rozell's home and vehicle. Rozell claims that the officers used force and that Officer Gulbin pushed him on to a couch during this search. He was told that the officers were investigating alleged acts of vandalism in the quarries on his property.

On April 6, 2009, defendant Judy Thomas reported to defendant Whitney that Rozell had smashed her family's mailbox. Claiming to be unaware of Thomas's report, on April 13, 2013, Rozell filed a police report claiming that quarry operators were operating an illegal business on his property and that they were engaging in criminal mischief and theft on his premises. According to Rozell, on April 19, 2009, he videotaped quarry operator defendant Hanjaras taking stone out of the quarry on his property. On April 21, 2009, defendant Hanjaras filed a complaint with defendant Whitney falsely claiming that Rozell

5

had harassed him. Defendant Hanjaras claimed that Rozell told him he was "going to get his sorry ass."

According to Rozell, as a result of the claims of defendants Judy Thomas and Hanjaras, he was detained for violating his probation. At some point during Rozell's incarceration, Probation Officer Gulbin informed Rozell of additional charges against him. After being detained for approximately 24 days, on May 11, 2009, Rozell was acquitted of the charge of smashing the Thomas's mailbox and found guilty of harassing Mr. Hanjaras. After a de novo hearing, in September of 2009, a Court of Common Pleas Judge found Rozell not guilty with respect to the incident involving Mr. Hanjaras.

According to Rozell, an additional charge related to the harassment claims of Joan Kamansky, was filed a short time after the May 2009 proceedings. Rozell claims that Officer Gulbin knew that Ms. Kamansky's allegations were untrue, but he filed the charge anyway.

Another incident involving Rozell, defendant Hanjaras, and the police occurred in October of 2009. According to Rozell, defendant Hanjaras harassed him, and although Rozell called the police, the State Police Trooper who came to investigate the incident was biased and prejudiced against him. Rozell alleges that

shortly after that incident, that same Trooper pulled him over without a legitimate reason.

On May 14, 2011, a Court of Common Pleas Judge found that Rozell had violated the terms and conditions of his probation by being convicted of a charge of harassment and sentenced to pay a fine, but the judge did not revoke Rozell's probation.

Rozell filed his complaint pursuant to 42 U.S.C. §1983. He alleges misconduct, harassment, false imprisonment, unlawful arrest, and false charges, and he claims injuries of emotional distress, loss of reputation, lost wages, and legal fees. In addition, he asks for one million dollars "from the parties who are deemed responsible," though does not specify whether this amount is claimed as compensatory or punitive damages.

Finding that Rozell failed to clearly allege a 42 U.S.C. § 1983 claim against defendants Hanjaras, Judy Thomas, Robert Thomas, and Matthew Thomas, on July 2, 2012, Judge Mannion ordered Rozell to file a more definite statement to support his complaint specifically describing the basis of his claims against those defendants. Concluding that defendants Susquehanna County Probation Department and the Pennsylvania State Police are immune from suit under the Eleventh Amendment and that the claims against defendant Whitney are barred by

the statute of limitations, on July 2, 2012, Judge Mannion also recommended that the motions to dismiss filed by those defendants be granted.

On July 17, 2012, Rozell filed a "More Definitive Statement" (doc. 45) of his claims against defendants Robert, Judy, and Matthew Thomas. He alleges that members of the Thomas family conspired to have him arrested. He alleges that defendant Judy Thomas signed a citation stating that she knew he was the individual who smashed her mailbox even though neither she nor her husband and son—Robert Thomas and Matthew Thomas—could have made a positive identification of him as the person who smashed the mailbox. He alleges that the probation department detained him from April 21, 2009, until May 11, 2009, for an alleged probation violation based on the charge made by defendant Judy Thomas. He also alleges that he lost his job as a result of the charge. He claims that the Thomases violated his rights under the Fourth and Fifth Amendments of the United States Constitution.[2]

Also on July 17, 2012, Rozell filed a "More Definitive Statement" (doc. 46) of his claim against defendant Hanjaras. Rozell claims that Hanjaras made a false charge against him on April 21, 2009, and that he gave false testimony against him

---

[2] Although Rozell refers to Articles Four and Five of the Constitution, since those Articles of the Constitution are not relevant to this case, we construe Rozell to be referring to the Fourth and Fifth Amendments to the Constitution.

on May 14, 2009. He alleges that on April 19, 2009, he made a video of defendants Hanjaras taking stone that he had not paid for from his property. According to Rozell, defendant Hanjaras was upset that he had been caught "red-handed," and in retaliation and in order to distract from his wrongdoing he made up a false story claiming that Rozell had done something to him the day before. Rozell alleges that he was at his mother's house, approximately 12 miles away, at the time that Hanjaras claimed he had harassed him, and, that is why Rozell won his case on appeal. Rozell also alleges that in October of 2009, he charged defendant Hanjaras with agricultural trespass. Rozell alleges that defendant Hanjaras, like the Thomas family, never signed a lease with him, and Rozell alleges that defendant Hanjaras made false accusations against him in an effort to have Rozell leave the property so that he could continue his illegal business activities. According to Rozell, the false accusations led to his incarceration. Rozell also alleges that defendant Hanjaras threw rocks at him and threatened him with a hammer.

On November 20, 2012, Rozell filed a motion for summary judgment against Robert, Judy, and Matthew Thomas and a brief in support of that motion.

On January 15, 2013, Judge Caputo adopted Judge Mannion's report and recommendation and dismissed the claims against the Susquehanna County Probation Department, the Pennsylvania State Police, and Trooper Whitney.[3]

### III. <u>Summary Judgment Standard.</u>

Rozell has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v.*

---

[3] On January 23, 2013, Rozell filed a motion (doc. 54) for an extension of time to file "objections to the Court's findings." He states that he was ill for the previous two weeks and that he did not receive the court's Order until January 18, 2013. On February 20, 2013, Rozell filed a document titled "Objection to Memorandum and Order to Dismiss, " and, on February 25, 2013, he filed another copy of that document. Because the court has already adopted Judge Mannion's Report and Recommendation, it appears that Rozell's motion for an extension of time to file objections should be denied. But because that motion concerns an order of the district court, we will not address that motion unless, of course, the district judge wishes us to do so.

*U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).

The substantive law identifies the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the

nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Where, as here, a party moves for summary judgment on an issue for which he bears the ultimate burden of proof, the moving party faces a difficult road in seeking summary judgment. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir.2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial

judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id*.

## IV. <u>Discussion</u>.

Rozell has moved for summary judgment on his claims against Robert, Judy, and Matthew Thomas. These defendants have not filed a brief in opposition to Rozell's motion for summary judgment, and pursuant to Local Rule 7.6, they are deemed not to oppose the motion. Nevertheless, we must still determine whether Rozell is entitled to summary judgment as a matter of law, *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990), and we conclude that Rozell is not entitled to summary judgment as a matter of law.

First, Rozell failed to file a statement of material facts as required by Local Rule 56.1. Given this failure to comply with the Local Rule, Rozell has failed to show that there are no genuine disputes of material fact.

Second, even putting aside his failure to file a statement of material facts, Rozell has failed to establish that he is entitled to judgment as a matter of law

because he has failed to establish a necessary requirement for his claim against the Thomases—i.e., the Thomases were acting under color of state law.

Rozell's claims are brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Robert, Judy, and Matthew Thomas are not state employees, rather they are private citizens. "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011)(quoting *Abbott v.*

*Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)). The Supreme Court has established a number of approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

Rozell asserts that the Thomas family violated his rights by making a false report about him to the police. "[M]erely complaining to the police does not convert a private party into a state actor for purposes of liability under § 1983." *Bingaman v. Bingaman*, 4:07-CV-2352, 2009 WL 2424641 at *7 (M.D. Pa. Aug. 5, 2009); *see also Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 68 (3d Cir. 2006)(stating that "in the absence of a conspiracy with the police to violate constitutional rights, a business's summons of a police officer to deal with a possible disturbance, does not make it a state actor."); *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009)("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'"). Although Rozell alleges that the Thomas family conspired in a plot to knowingly have him arrested, he has not presented any evidence that the any of them conspired with a state actor to violate his constitutional rights. Accordingly, Rozell has failed to establish that Robert, Judy, and Matthew Thomas were acting under color of state law. Furthermore, to the extent that Rozell's claims against these defendants are based on their testimony in court, the defendants are immune from damages under Section 1983 for their testimony in court. *Briscoe v. LaHue,* 460 U.S. 325, 345 (1983). Therefore, Rozell has failed to

establish that he is entitled to judgment as a matter of law, and we will recommend that his motion for summary judgment be denied.

## V. <u>Recommendations.</u>

Accordingly, for the foregoing reasons, it is recommended that Rozell's motion (doc. 50) for summary judgment be denied.

> The Parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of April, 2013.

                                                  S/*Susan E. Schwab*
                                                  Susan E. Schwab
                                                  United States Magistrate Judge